1
2
3
4
5
6
7

8              UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JACOB RADER,                           No.  2:19-cv-1265 WBS AC P

12              Plaintiff,

13      v.                                   ORDER AND

14   COUNTY OF PLACER, et al.,               FINDINGS AND RECOMMENDATIONS

15              Defendants.

16

17         Plaintiff is a former state prisoner proceeding without an attorney in this civil rights action

18   pursuant to 42 U.S.C. § 1983.  Currently before the court are defendants' motion for summary

19   judgment and plaintiff's cross-motion for summary judgment.  ECF Nos. 61, 66.  For the reasons

20   stated below, the undersigned recommends that both motions be denied.

21      I.    Procedural History

22         On July 9, 2019, plaintiff filed the original complaint in this case, naming thirteen

23   defendants, several Doe defendants, and presenting fifteen putative claims.  ECF No. 1.  The

24   court screened the complaint and found that the only claims sufficiently pled were claims of

25   excessive force against two defendants, Solbos and Wehe.  ECF No. 12.  Plaintiff was given the

26   options of amending the complaint or proceeding on the complaint as screened.  Id. at 9.  He

27   chose to amend.  ECF No. 14.  Plaintiff filed a first amended complaint that was signed and

28   certified under penalty of perjury that the matters alleged are true and correct.  ECF No. 18

                                         1

1  ("FAC").

2           The FAC named thirteen defendants, and presented 17 putative claims, all arising from

3  plaintiff's detention at the Placer County Jail in 2018, pending his extradition to Virginia.  ECF

4  No. 18.  On screening, the FAC was limited to a single claim against defendants Solbos and

5  Wehe for using excessive force on July 12, 2018.  ECF No. 22 at 6; ECF No. 24.

6           After the close of discovery, defendants moved for summary judgment.  ECF No. 61.

7  Defendants simultaneously served plaintiff with notice of the requirements for opposing a motion

8  pursuant to Rule 56 of the Federal Rules of Civil Procedure along with their motion for summary

9  judgment.  ECF No. 61-4.  Plaintiff sought an extension of time to file an opposition to

10  defendants' motion.  ECF No. 63.  Plaintiff filed a "Notice of Motion and Cross Motion for

11  Summary Judgment."  ECF No. 66.  The court construed plaintiff's "Notice of Motion and Cross

12  Motion for Summary Judgment" as an opposition to defendants' motion for summary judgment,

13  granted plaintiff's motion for extension of time to file an opposition, and deemed plaintiff's

14  opposition timely.  ECF No. 67 at 4-5.  Defendants filed a reply to plaintiff's opposition.  ECF

15  No. 68.

16       II.       Allegations of the First Amended Complaint

17           The FAC alleges the following facts concerning the excessive force claim against

18  defendants Solbos and Wehe.  On July 12, 2018, plaintiff was in his cell naked after a medical

19  incident.  FAC at 7.  He was cold and requested clothes.  Id.  Because his requests were ignored,

20  plaintiff covered the cell window with old food to force officers to respond.  Id.  Plaintiff sat on a

21  stool in his cell, faced the back wall, and complied with Solbos' order not to move.  Id. at 8.

22  When Solbos was handcuffing plaintiff, plaintiff told Solbos about his large bone anomalies on

23  both wrists to avoid over-tightening.  Id.  Nonetheless, Solbos over-tightened the handcuffs

24  causing plaintiff pain and injury.  Id. at 8-9.  When plaintiff asked for Solbos to loosen the

25  handcuffs, Solbos responded by using a technique called a "rear-wrist-lock," forcing plaintiff's

26  right hand against or into his inner forearm.  Id. at 10.  In self-defense, plaintiff kicked backward,

27  striking Solbos in the leg.  Id.  Plaintiff was then slammed into the right cement wall, hitting his

28  head.  Id. at 10-11.  His legs were swept from underneath him causing him to hit the ground.  Id.

He landed face down on the ground, still handcuffed behind his back, and was kicked in the ribs. Id. at 14. Solbos then jumped down on plaintiff's spine with his left knee and plaintiff's head with his right knee. Id. Wehe also jumped down on plaintiff, with his left knee on plaintiff's calf and his right knee on plaintiff's spine. Id. Solbos then proceeded to repeatedly slam plaintiff's head into the cement floor in a "jack-hammering" motion, while Wehe told plaintiff to "stop resisting." Id. Another officer assisted in applying a "figure four leg lock" to stop plaintiff from resisting. Id. at 15. Wehe took control over the lock. Id.

Solbos ordered a sergeant to retrieve an emergency restraint chair ("ERC"). Id. at 16. Solbos assisted in getting plaintiff to his feet and into the ERC. Id. While plaintiff was in the ERC, compliant, not moving, not spitting, and begging for the handcuffs to be removed, Wehe pulled plaintiff's head and neck backward at the jaw using a pain compliance technique. Id. at 18. Plaintiff screamed in pain as Solbos struggled for 2.5 minutes to remove the handcuffs. Id. at 17. While doing so, Solbos follows another person's instructions to flip plaintiff's wrist upside down, causing plaintiff "to spontaneously lift-off the emergency restraint chair." Id. at 20. Once the handcuffs were removed, Wehe wheeled plaintiff into a safety cell and left him there naked and strapped to the ERC for four hours. Id. at 21.

III.    Motion for Summary Judgment

A.    Defendants' Arguments

Defendants argue that they are entitled to summary judgment on the grounds that plaintiff's excessive force and failure to protect claims are barred by Heck v. Humphrey, 512 U.S. 477 (1994), and that defendants did not violate plaintiff's Fourteenth Amendment rights. ECF No. 61-1 at 1, 5-11. Alternatively, they argue they are entitled to qualified immunity. Id. at 11-13.

B.    Plaintiff's Response

As an initial matter, plaintiff's response to defendants' motion is captioned "cross-motion for summary judgment." ECF No. 66. However, it appears to be an opposition to the defendants' motion because plaintiff merely refutes defendants' arguments for summary judgment and does not seek judgment in his favor. See ECF No. 66. Nevertheless, to the extent plaintiff intended

1   ECF No. 66 as a cross-motion for summary judgment, the motion is untimely[1] and not

2   accompanied by a separate statement of facts, as required by Local Rule 260(a).  See L.R. 260(a);

3   Fed. R. Civ. P. 56(c)(1)(A).  Plaintiff's motion should therefore be summarily denied and the

4   document will be considered here solely as an opposition to defendants' motion for summary

5   judgment.

6          Plaintiff's opposition to defendants' motion for summary judgment argues that his

7   excessive force claim is not barred by Heck because defendants used excessive and unreasonable

8   force *before* and *after* plaintiff acted in self-defense against Solbos, and because his criminal

9   conviction was expunged on July 12, 2024.  ECF No. 66-1 at 7-16.  Plaintiff also argues that he

10  suffered a Fourteenth Amendment violation on July 12, 2018, when defendants used

11  unreasonable force when they handcuffed him and assaulted him.  Id. at 16-18; see also Id. 12-16

12  (arguing six separate instances of excessive force by defendants).  Lastly, plaintiff argues that

13  defendants are not entitled to qualified immunity because they had multiple opportunities to

14  resolve the situation without the use of force, and defendant Solbos could not prove that plaintiff

15  smeared feces on his cell window before entering his cell to handcuff him.  Id. at 18-19.

16          C.    Defendants' Reply

17          In their reply, defendants argue that plaintiff has failed to provide a legal or evidentiary

18  basis for why the Heck preclusion doctrine does not bar this action and has not shown that his

19  conviction was reversed, expunged or invalidated for Heck purposes.  ECF No. 68 at 2-4.

20  Defendants also argue that plaintiff uses the wrong legal standard for his excessive force claims,

21  and even if he had used the correct standard, his claims of excessive force under the Fourteenth

22  Amendment are not supported by admissible evidence.  Id. at 4.  Lastly, defendants argue that

23  plaintiff's opposition fails to prove defendants violated a clearly established right at the time of

24  the alleged misconduct and relies on conclusory statements that are not supported by admissible

25  evidence and are irrelevant to the issue of qualified immunity.  Id. at 5.

26

27  [1]  The deadline to file motions for summary judgment was May 31, 2024.  ECF No. 49.  Because
    plaintiff did not seek an extension of time to file a cross-motion for summary judgment, the
    court's order construing ECF No. 66 as an opposition and deeming the *opposition* timely did
28  nothing to extend or find timely a "cross-motion for summary judgment."  See ECF No. 67.

1    IV.    Legal Standards for Summary Judgment[2]

2          Summary judgment is appropriate when the moving party "shows that there is no genuine

3    dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

4    Civ. P. 56(a). Under summary judgment practice, "[t]he moving party initially bears the burden

5    of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627

6    F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The

7    moving party may accomplish this by "citing to particular parts of materials in the record,

8    including depositions, documents, electronically stored information, affidavits or declarations,

9    stipulations (including those made for purposes of the motion only), admissions, interrogatory

10   answers, or other materials" or by showing that such materials "do not establish the absence or

11   presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to

12   support the fact." Fed. R. Civ. P. 56(c)(1).

13         "Where the non-moving party bears the burden of proof at trial, the moving party need

14   only prove that there is an absence of evidence to support the non-moving party's case." Oracle

15   Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).

16   Indeed, summary judgment should be entered, "after adequate time for discovery and upon

17   motion, against a party who fails to make a showing sufficient to establish the existence of an

18   element essential to that party's case, and on which that party will bear the burden of proof at

19   trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element

20   of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such

21   a circumstance, summary judgment should "be granted so long as whatever is before the district

22   court demonstrates that the standard for the entry of summary judgment, as set forth in Rule

23   56(c), is satisfied." Id.

24         If the moving party meets its initial responsibility, the burden then shifts to the opposing

25   party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec.

26   _____
     [2]  Pro se prisoners must be provided with notice of the requirements for summary judgment. See

27   Klingele v. Eikenberry, 849 F.2d 409, 411 (9th Cir. 1988) (pro se prisoners must be provided with
     notice of the requirements for summary judgment); Rand v. Rowland, 154 F.3d 952, 960 (9th Cir.
     1998) (en banc) (movant may provide notice). As noted in Section I, defendants complied with

28   this requirement. See ECF No. 61-4.

1    Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  In attempting to establish the

2    existence of this factual dispute, the opposing party may not rely upon the allegations or denials

3    of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

4    admissible discovery material, in support of its contention that the dispute exists.  See Fed. R.

5    Civ. P. 56(c).  Verified complaints, which are signed under penalty of perjury that the contents of

6    complaint are true and correct, are admissible to oppose summary judgment.  Jones v. Blanas, 393

7    F.3d 918, 923 (9th Cir. 2004).  The opposing party must demonstrate that the fact in contention is

8    material, i.e., a fact "that might affect the outcome of the suit under the governing law," and that

9    the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for

10   the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

11        In the endeavor to establish the existence of a factual dispute, the opposing party need not

12   establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

13   dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

14   trial."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987)

15   (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).  Thus, the

16   "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see

17   whether there is a genuine need for trial."  Matsushita, 475 U.S. at 587 (citation and internal

18   quotation marks omitted).

19        "In evaluating the evidence to determine whether there is a genuine issue of fact, [the

20   court] draw[s] all inferences supported by the evidence in favor of the non-moving party."  Walls

21   v. Cent. Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted).  It is the

22   opposing party's obligation to produce a factual predicate from which the inference may be

23   drawn.  See Richards v. Neilsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to

24   demonstrate a genuine issue, the opposing party "must do more than simply show that there is

25   some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586 (citations

26   omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the

27   non-moving party, there is no 'genuine issue for trial.'"  Id. at 587 (quoting First Nat'l Bank, 391

28   U.S. at 289).

6

1    V.    Evidentiary Issues

2        A.    Request for Judicial Notice

3        Defendants request that the court take judicial notice of the following records of the Placer

4    County Superior Court in the matter of The People of the State of California v. Richard Jacob

5    Antony Rader, criminal case number 62-161288: (a) Certified Transcript – Trial Testimony of

6    Brandon Wehe March 6, 2019, March 8, 2019 (attached as Exhibit 2 to Hannah Kreuser

7    Declaration in Support of Defendants' Motion for Summary Judgment and/or Partial Summary

8    Judgment ("Kreuser Decl.")); (b) Certified Transcript – Trial Testimony of Paul Solbos March 6,

9    2019 (attached as Exhibit 3 to Kreuser Decl.); (c) Information filed on December 11, 2018

10   (attached as Exhibit 8A to Kreuser Decl.); (d) Superior Court of the State of California in and for

11   the County of Placer Advisement and Waiver of Rights (Misdemeanor) (attached as Exhibit 8B to

12   Kreuser Decl.); and (e) Criminal Minutes dated March 15, 2019 (attached as Exhibit 8C to

13   Kreuser Decl.).  ECF No. 61-2 at 2.  Defendants also request that the court take judicial notice of

14   various filings in this case, specifically: (a) Amended Complaint, ECF No. 18; (b) Order and

15   Findings and Recommendations, ECF No. 22; (c) Order, ECF No. 24; (d) Discovery and

16   Scheduling Order, ECF No. 48; and (e) Order, ECF No. 55.  Id. at 3.

17       Plaintiff requests that the court take judicial notice of the certified transcripts of

18   defendants Solbos and Wehe's trial testimony in The People of the State of California v. Richard

19   Jacob Rader, criminal case number 62-161288, and plaintiff's amended complaint in this case.

20   ECF No. 66-2.  Plaintiff attaches these documents as exhibits in support of his motion for

21   summary judgment and/or his objection to defendants' motion for summary judgment and/or

22   partial summary judgment.  See ECF No. 66 at 38-186; 287-307; 699-765.  It does not appear that

23   plaintiff objects to the documents defendants submitted for judicial notice.  Instead, plaintiff

24   merely duplicates parts of defendants' request and submits different, albeit materially identical,

25   trial transcripts.[3]

26   _____

27   [3] Unlike the certified trial transcripts submitted by defendants, the plaintiff's versions have
     March 18, 2019, file stamps from the Superior Court of California County of Placer and do not
28   include indices.  Compare ECF No. 62-1 with ECF No. 66 at 38-186, 699-765.  Otherwise, they
     appear to include the same material content.

1    "The court may judicially notice a fact that is not subject to reasonable dispute because it:

2    (1) is generally known . . . or (2) can be accurately and readily determined from sources whose

3    accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).  The court "may take notice of

4    proceedings in other courts, both within and without the federal judicial system, if those

5    proceedings have a direct relation to matters at issue." United States ex rel. Robinson Rancheria

6    Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992) (citation and internal

7    quotation marks omitted) (collecting cases).  A certified reporter's transcript from a state court is

8    judicially noticeable.  Johnson v. Uribe, 700 F.3d 413, 423 n.4 (9th Cir. 2012).  Accordingly, the

9    parties' requests for judicial notice will be granted.

10        B.    Defendants' Evidentiary Objections

11    With their reply, defendants Solbos and Wehe filed numerous objections to plaintiff's

12    evidence in support of his opposition to their motion for summary judgment.  ECF No. 68-1.

13    Because the evidence to which defendants object is not material to resolution of defendants'

14    motion, the undersigned declines to address those objections.

15    VI.    Undisputed Material Facts[4]

16        1.    Plaintiff's Behavior Before July 12, 2018

17    Beginning about June 19, 2018, and at all times relevant to the complaint, plaintiff was a

18    pre-trial detainee in the County of Placer Auburn Main Jail.  ECF No. 63-1, Defendants'

19    Statement of Undisputed Facts ("DSUF") No. 1.  Sometime between June 19, 2018, and July 12,

20    2018, plaintiff received jail write ups, which resulted in his transfer to the jail's discipline tank,

21    A-tank.  ECF No. 61-9, Declaration of Brandon Wehe ("Wehe Decl.") ¶ 3; ECF No. 61-10,

22    Declaration of Paul Solbos ("Solbos Decl.") ¶ 3.  Prior to July 12, 2018, plaintiff's interactions

23    with jail staff were at times difficult.  DSUF No. 25.  Prior to July 12, 2018, and at the time of the

24    alleged excessive force incident, defendants Solbos and Wehe were aware that plaintiff had at

25    least one felony charge for obstruction of a peace officer.  DSUF No. 27.

26

27    _____

[4]  Unless otherwise noted, these facts are undisputed by the parties or are deemed undisputed by
28    the court upon review of the record evidence. The parties' diverging versions of events are
     discussed separately in the disputed facts section of this recommendation.

On July 12, 2018, prior to the alleged use of force incident, plaintiff suffered a seizure or similar medical episode, and was found unresponsive in his cell.  DSUF No. 24.  Plaintiff was returned to his cell after the medical incident.  FAC at 7; Jacob Antony Rader Deposition ("Plaintiff Depo.") 42:22-43:22.

### 2.  Use of Force Incident on July 12, 2018

While in his cell following the medical episode, plaintiff tried to use the intercom to contact jail staff.   Plaintiff Depo. 48:12-16; ECF No. 62-1 at 1-79, Brandon Wehe's Trial Testimony Transcript ("Wehe Trial Testimony") 6:19-7:11; 18:13-18.  Jail staff only heard sounds of a toilet flushing.  Wehe Trial Testimony 6:19-24, 7:12-16, 18:19-20.  In response, jail staff went to plaintiff's cell, where they observed a brown substance that smelled like feces obscuring the view into plaintiff's cell.  Plaintiff's Depo. 50:22-51:7; 55:9-56:23; Wehe Trial Testimony 8:3-10.  The brown substance could have been feces based on the texture, smell, and look of the substance.  Plaintiff Depo. 56:4-23.  The obstruction presented a safety hazard because it obscured the view into the cell and prevented routine cell and safety checks.  Wehe Trial Testimony 9:16-25; ECF No. 62-1 at 80-252, Paul Solbos's Trial Testimony Transcript ("Solbos Trial Testimony") 9:5-14.

Plaintiff did not comply with either Wehe's or Sergeant Jones's original orders to approach the cell's food port to be cuffed so that he could be removed from the cell.  DSUF Nos. 9, 10.  Plaintiff did comply with Sergeant Jones's order to sit at the desk stool, facing the back of the cell with his hands behind his back.  DSUF No. 11.

Defendants Solbos and Wehe were tasked with entering plaintiff's cell, to handcuff plaintiff, and remove plaintiff from his cell so that it could be cleaned.  DSUF No. 12.  Defendants entered plaintiff's cell, and Solbos handcuffed plaintiff while he was sitting on the desk stool, facing the back of the cell with his hands behind his back.  Plaintiff Depo. 57:20-58:7; Wehe Trial Testimony 11:7-12, 12:10-12, 26:4-5; Solbos Trial Testimony 9:17-26; Solbos Decl. ¶ 7.  Plaintiff complained the handcuffs were too tight and asked that they be loosened.  Plaintiff Depo. 59:12-20.  Solbos and Wehe checked the fitting of the handcuffs, did not loosen them, and Solbos double locked the handcuffs.  Solbos Trial Testimony 9:25-26, 11:8-28; Wehe Trial

9

Testimony 12:13-17, 26:4-8; Wehe Depo. 57:25-58:2; Plaintiff Depo. 59:12-22.

Once handcuffed, defendants helped plaintiff turn and stand towards the cell door. Plaintiff's Depo. 59:25-62:11; Solbos Trial Testimony 15:7-9. As defendants were escorting plaintiff towards the cell door, plaintiff raised his leg and kicked defendant Solbos. Plaintiff's Depo. 62:17-63:7; Solbos Decl. ¶ 8; Wehe Decl. ¶ 8. Plaintiff, Solbos, and Wehe ended up on the ground, where Solbos and Wehe continued to restrain plaintiff. FAC at 14-15; Plaintiff's Depo. 64:5-6, 64:20-65:6; Wehe Trial Testimony 32:15-23, 35:15-16, 38:9-39:6, 39:15-16; Solbos Trial Testimony 18:11-16, 111:19-112:13, 113:20-114:15. Solbos requested an emergency restraint chair ("ERC"). Solbos Trial Testimony 114:16-27. When the ERC arrived, plaintiff was stood up and put in the ERC. Plaintiff's Depo. 66:10-13; Solbos Trial Testimony 115:24-27.

Since it is common for inmates to spit while being secured into an ERC, Wehe applied a salivary gland hold on plaintiff. ECF No. 61-7, Brandon Wehe Deposition ("Wehe Depo.") 129:7-15; Wehe Trial Testimony 16:17-22, 46:2-47:9. Plaintiff did not try to spit on defendants or any staff. FAC at 18; Wehe Trial Testimony 42:28-43, 46:16-19. While plaintiff was restrained in the chair, Solbos removed his handcuffs. Plaintiff Depo. 67:1-3; Solbos Trial Testimony 128:9-10.

### 3. Handcuffing Technique

A "proper fit" of handcuffs will ensure they are not too tight to cause discomfort or pain as well as to ensure they are tight enough that the person in handcuffs cannot pull their hands through and out of the handcuffs. DSUF No. 14. To maintain this proper fit, handcuffs are double locked, so the handcuffs cannot be tightened further. Id.

### 4. Criminal Conviction

As set forth more fully below in relation to the Heck issue, plaintiff was charged in Placer County with resisting an officer and battery against a custodial officer. The case was resolved with a plea of nolo contendere to the latter charge.

VII.    Disputed Facts

A.    Plaintiff's Version of Events on July 12, 2018

Plaintiff claims that on July 12, 2018, the substance on his cell window could have been

10

cleaned without the need to enter his cell.  Plaintiff Depo. 51:13-52:10; FAC at 9.

Plaintiff claims that when the handcuffs were being put on him, he told the officers that he had huge bone anomalies on each wrist and asked that they please not overtighten the handcuffs. Plaintiff's Depo. 59:6-22; FAC at 8.  Because the left handcuff was placed too tightly, plaintiff immediately asked that it be loosened.  Plaintiff Depo. 59:12-22.  Instead of being loosened, the right handcuff was placed even tighter.  Id.  Plaintiff screamed to have both handcuffs loosened. Id.; FAC at 10.  His requests were ignored or denied altogether.  Plaintiff Depo. 59:12-22.

Once plaintiff was turned around and standing, and defendants began to walk him forward, Solbos took plaintiff's right wrist, pushed it into plaintiff's right forearm, causing even more excruciating pain to the point where plaintiff felt he was going to faint.  Plaintiff Depo. 62:8-16; FAC at 10.  Plaintiff screamed that Solbos was going to break his wrist.  Plaintiff Depo. 62:15-16.  Plaintiff then, with what little strength he had left, kicked backwards in self-defense, striking Solbos's leg.  Plaintiff Depo. 62:17-63:7; 69:13-70:4.  In response, defendants slammed plaintiff against the right-side cell wall, causing him to hit his head and shoulder on the wall. Plaintiff's Depo. 63:9-25; FAC at 10, 11.  Plaintiff's legs were then swept from underneath him and his body hit the cement floor like a pancake, causing bruises to his inner knees.  Plaintiff Depo. 64:9-11.  He heard defendants tell him to stop resisting but he was not resisting.  Plaintiff Depo. 64:11-16.

Plaintiff believes defendants kicked him in the rib area because he had bruises on each side of his ribs.  Plaintiff Depo. 64:17-19; 65:11; FAC at 14.  While he was face down on the ground, still handcuffed, defendants jumped on plaintiff's body.  Plaintiff Depo. 64:19-21; FAC at 14.  Solbos dropped his knee onto the back of plaintiff's head and left knee in the middle of plaintiff's back.  Plaintiff Depo. 64:21-24; ECF No. 18, FAC, at 14.  Wehe dropped his knee in the bottom of plaintiff's back and his left knee on plaintiff's left calf, leaving bruises.  Plaintiff Depo. 64:25-65:6; FAC at 14.

Plaintiff continued to scream.  Plaintiff Depo. 65:7-14.  Solbos told plaintiff to stop resisting as he slammed plaintiff's face into the cement floor four or five times.  Plaintiff Depo. 65:15-18; FAC at 14.  As plaintiff continued to scream to get the handcuffs off, Solbos tried to

1    get them off but could not get them off.  Plaintiff Depo. 65:65:19-25; FAC at 16.

2           After Solbos ordered that an ERC be retrieved, plaintiff was told he was going to be lifted

3    and walked out of the cell.  Plaintiff Depo. 66:10-11; FAC at 16.  The handcuffs were not

4    removed before placing plaintiff in the ERC.  Plaintiff Depo. 66:14-16.  Once in the ERC, it took

5    Solbos approximately 2 minutes and 30 seconds to get the handcuffs off.  Plaintiff Depo. 67:1-3;

6    FAC at 17.  During this time, plaintiff continued to scream and lunge off the ERC chair because

7    of the pain caused when trying to remove the handcuffs.  Plaintiff Depo. 67:3-68:22.  Although

8    plaintiff was screaming for the handcuffs to be removed, he was compliant.  ECF No. 18, FAC, at

9    17.  Plaintiff was left naked, strapped to an ERC, for approximately four hours in a room that was

10   approximately 65 degrees.  ECF No. 18, FAC, at 21.

11          Plaintiff claims that defendant Solbos and Wehe's actions caused the following injuries:

12   (1) excruciating pain, causing faintness, when Solbos applied a rear-wrist-lock on plaintiff,

13   Plaintiff's Depo. 62:8-16; (2) swelling to the right side of plaintiff's head and a 1-2 inch by 3-4

14   inch scrape, bruise, or scar on his right shoulder from when Solbos and Wehe slammed plaintiff

15   into the right-cell wall, id. 63:18-25, 84:1-4; 84:22-85:3; (3) bruising to both inner knees from

16   being swept off his feet, id. 64:9-11, 84:9-12; (4) bruising to each side of his ribs from being

17   kicked while on the ground, id. 64:17-21, 84:9-13; (5) four-inch-diameter bruise on the base of

18   his back from Wehe jumping down on his back with his knee, id. 64:25-65:3; 84:16-17; FAC at

19   14; (6) six-inch blood clot in his left calf from Wehe jumping down on his calf with his left knee,

20   Plaintiff Depo. 65:3-6, 84:9-12; FAC at 14; (7) cuts to plaintiff's wrists and a popped blood

21   vessel on top of right hand from the handcuffs, Plaintiff Depo. 84:19-21; FAC at 9; (8) nerve

22   damage to plaintiff's right wrist, arm, and neck that lasted seven to eight months, which caused

23   shooting pain and plaintiff's inability to walk standing straight up. Plaintiff Depo. 84:22-24;

24   85:22-87:1; FAC at 23.

25          B.     Defendants' Version of Events on July 12, 2018

26          Defendants state that on July 12, 2018, the substance smeared on plaintiff's cell window

27   was feces and presented a biological hazard, as well as a safety hazard, which required them to

28   move plaintiff out of cell A-141 so that it could be cleaned.  Wehe Trial Testimony 9:16-10:10,

11:25-28; Solbos Trial Testimony 9:5-14; Wehe Depo. 27:25-28:13, 39:7-16; Wehe Decl. ¶ 6;

Solbos Decl. ¶ 6.  When defendants entered the cell and Solbos placed the handcuffs on plaintiff,

Wehe and Solbos both confirmed that the handcuffs were "properly fitted" on plaintiff's wrist.

Wehe Trial Testimony 12:10-13:3, 14:3-9, 25:28-27:1; Solbos Trial Testimony 10:24-11:7.

As defendants walked to escort plaintiff out of his cell, Solbos did not apply a rear-wrist

lock on plaintiff.  Solbos Trial Testimony 44:8-10.  Plaintiff kicked Solbos's leg forcefully,

causing defendants to lose their control of plaintiff and Solbos and plaintiff to fall to the ground.

Wehe Trial Testimony 15:1-15, 31:2-11, 39:15-17; Solbos Trial Testimony 15:21-17:21, 50:11-

51:1, 113:15-114:2; Solbos Decl. ¶ 8.  Before falling to the ground, plaintiff and Solbos fell into

the wall and slid to the ground.  Solbos Trial Testimony 50:11-51:1.  At no point did either

defendant slam plaintiff into the cell wall.  Solbos Trial Testimony 96:4-14; Wehe Depo. 45:20-

46:1.

Once on the ground, plaintiff resisted defendants attempts to turn plaintiff on his stomach

and to get him under control.  Wehe Trial Testimony 15:13-19, 34:4-10; Solbos Trial Testimony

125:23-26.  In securing plaintiff on the ground, Solbos and Wehe placed only their necessary

body weight on plaintiff to regain control and prevent a further assault of staff and prevent

plaintiff from causing harm to himself.  Wehe Trial Testimony 38:9-40:11; Solbos Trial

Testimony 113: 27-114:15; Solbos Decl. ¶ 8; Wehe Decl. ¶ 8.  Solbos did not jump on, strike, or

slam plaintiff's head into the ground, or kick plaintiff in the ribs.  Wehe Trial Testimony 39:10-

11; Solbos Depo. 148:3-19; Solbos Decl. ¶ 8.  Wehe did not jump on or kick Rader.  Wehe Depo.

55:3-7.

While on the ground, Solbos did not try to remove plaintiff's handcuffs.  Solbos Trial

Testimony 112:23-113:9.  Once plaintiff was under control and an ERC arrived, defendants

escorted plaintiff to the ERC where he was secured with ERC straps.  Wehe Trial Testimony

16:11-16.  While being secured in the ERC and during the removal of the handcuffs, plaintiff

continued resisting.  Wehe Trial Testimony 45:12-19; Solbos Trial Testimony 116:6-13, 126:4-

16; Solbos Depo. 208:13-209:15; Solbos Decl. ¶ 9.  Plaintiff did not hold his hands and wrists

still and was actively manipulating the handcuffs, including by attempting to use the ERC frame

13

1    against the handcuffs and applying pressure to his wrists. Solbos Trial Testimony 126:4-16;

2    Solbos Depo. 208:13-209:15; Solbos Decl. ¶ 9.  This made it difficult to remove plaintiff's

3    handcuffs.  Solbos Trial Testimony 116:6-13, 126:4-24.

4        VIII.    Discussion

5            A.    Heck Bar

6                1.    Legal Standard

7        "[A] state prisoner's claim for damages is not cognizable under 42 U.S.C. § 1983 if 'a

8    judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or

9    sentence,' unless the prisoner can demonstrate that the conviction or sentence has previously been

10    invalidated." Edwards v. Balisok, 520 U.S. 641, 643 (1997) (quoting Heck, 512 U.S. at 487).

11    "[I]f the district court determines that the plaintiff's action, even if successful, will *not*

12    demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action

13    should be allowed to proceed."  Heck, 512 U.S. at 487 (emphasis in original).  "In evaluating

14    whether claims are barred by Heck, an important touchstone is whether a § 1983 plaintiff could

15    prevail only by negating 'an element of the offense of which he has been convicted.'"

16    Cunningham v. Gates, 312 F.3d 1148, 1153-54 (9th Cir. 2002) (quoting Heck, 512 U.S. at 487

17    n.6).

18        "To decide whether success on a section 1983 claim would necessarily imply the

19    invalidity of a conviction, [the court] must determine which acts formed the basis for the

20    conviction."  Lemos v. County of Sonoma, 40 F.4th 1002, 1006 (9th Cir. 2022).  "When the

21    conviction is based on a guilty plea, we look at the record to see which acts formed the basis for

22    the plea."  Lemos, 40 F.4th at 1006 (citations omitted).  It is the defendants' burden to establish

23    the basis for the conviction.  Sanford v. Motts, 258 F.3d 1117, 1119 (9th Cir. 2001) ("It was the

24    burden of the defendants to establish their defense by showing what the basis was.").

25        To determine the factual basis of a plea, for Heck purposes, the court looks at what

26    transpired at the time of the plea.  See Smith v. City of Hemet, 394 F.3d 689, 698 (9th Cir. 2005)

27    (en banc) (the court was unable to determine the basis of the plea because "[n]either party in its

28    briefs or at oral argument was able to identify the facts underlying the plea or to advise us

1    regarding what transpired at the time Smith entered his plea.").  If the factual basis of plaintiff's

2    plea is identified and plaintiff's § 1983 action would directly negate the factual basis of plaintiff's

3    plea, plaintiff's § 1983 action is barred by Heck.  Sanders v. City of Pittsburg, 14 F.4th 968, 970

4    (9th Cir. 2021).  However, if the record is silent as to the factual basis for the plea, defendants

5    will be unable to establish their defense, and plaintiff's § 1983 action will not be Heck barred.

6    Martell v. Cole, 115 F.4th 1233, 1239 (9th Cir. 2024) (claim of excessive force was not barred

7    under Heck because plaintiff's guilty plea "did not specify which act (or acts) of resistance or

8    obstruction was (or were) the basis of his plea.  His plea could have been based on any of several

9    acts of resistance or obstruction, either before or after the use of force he challenges"); Hooper v.

10    County of San Diego, 629 F.3d 1127, 1134 (9th Cir. 2011) (claim for excessive force was not

11    barred under Heck where the record was silent on which acts or acts formed the basis of

12    plaintiff's conviction); Sanford, 258 F.3d at 1119 (claim of excessive force not barred under Heck

13    because nothing in the criminal record, nor plaintiff's testimony, established the factual basis of

14    plaintiff's plea).

15         2.   Criminal Conviction

16         The following facts are undisputed.  On December 11, 2018, the Placer County District

17    Attorney filed the Information in Criminal Case No. 62-161288 ("Criminal Action"), which

18    included a count for the violation of California Penal Code § 69(a).  ECF No. 61-11 at 1-4,

19    Exhibit 8A, Information; Plaintiff Depo. 71:1-4.  The Information was amended to include count

20    two for battery against a custodial officer.  ECF No. 61-11 at 1-4, Exhibit 8A, Information;

21    Plaintiff Depo. 71:5-9, 72:11-19.  These charges were related to the events that occurred on July

22    12, 2018.  Plaintiff Depo 71:1-74:24; Wehe Trial Testimony 4:16-17:3, 18:13-47:9; Solbos Trial

23    Testimony 4:7-9, 6:3-9:26, 10:11-19:18.

24         On March 15, 2019, plaintiff entered a nolo contendere plea to count two, battery against

25    a custodial officer under California Penal Code § 243.1.  ECF No. 61-11 at 3, Exhibit 8A,

26    Information; ECF No. 61-11 at 6, Exhibit 8B, Advisement and Waiver of Rights (Misdemeanor);

27    ECF No. 61-11 at 11, Exhibit 8C, Criminal Minutes dated March 15, 2019; Plaintiff Depo. 75:16-

28    80:24.  The Information, Advisement and Waiver of Rights (Misdemeanor), and the Criminal

15

1    Minutes of plaintiff's plea in the Criminal Action do not state the details of the factual basis for

2    plaintiff's plea.  ECF No. 61-11 at 3, Exhibit 8A, Information; ECF No. 61-11 at 6, Exhibit 8B,

3    Advisement and Waiver of Rights (Misdemeanor); ECF No. 61-11 at 11, Exhibit 8C, Criminal

4    Minutes dated March 15, 2019; Plaintiff's Depo. 75:16-80:24.  The only notation to a "factual

5    basis" for plaintiff's plea are the words "factual basis" written on the Criminal Minutes.  ECF No.

6    61-11 at 11, Exhibit 8C, Criminal Minutes dated March 15, 2019; Plaintiff's Depo. 75:16-80:24.

7         Defendants argue that plaintiff's excessive force claims against Solbos and Wehe are

8    barred by <u>Heck</u> because "a finding in Plaintiff's favor in this action would necessarily imply the

9    invalidity of plaintiff's "nolo contendere plea to resolve the charges filed against him, which were

10   factually based on *his resistance and failure to follow the commands of Defendants Solbos and*

11   *Wehe* during the [July 12, 2018] Incident."  ECF No. 61-1 at 7 (emphasis added).  Defendants

12   assert that the Incident "collectively refers to the events beginning when Defendants Solbos and

13   Wehe entered Plaintiff's cell at approximately 3:00 p.m. on July 12, 2018, and ending when

14   Plaintiff was secured in the [ERC] and exited A-tank" and "includes Plaintiff's 'mule-kick' to

15   Defendant Solbos and the subsequent reactions of the parties."  DSUF No. 2.  Defendants further

16   assert that

17            Regardless of whether each alleged act of excessive force actually
              occurred (which is disputed), each alleged act of excessive force is
18            contained within one continuous transaction, relating to the actions
              of both Defendants in removing Plaintiff from his cell A-141 on July
19            12, 2018, and their response to regain control of Plaintiff, during and
              after Plaintiffs use of force and resistance against Defendant Solbos
20            pursuant to California Penal Code § 243.1.

21   ECF No. 61-1 at 8.

22        Plaintiff argues that his excessive force claim against Solbos and Wehe is not barred by

23   <u>Heck</u> because defendants used excessive and unreasonable force *before* and *after* plaintiff acted in

24   self-defense against Solbos, and because his criminal conviction was expunged on July 12, 2024.

25   ECF No. 66-1 at 7-16.  For the reasons discussed below, the undersigned concludes that

26   plaintiff's excessive force claims against defendants Solbos and Wehe are not barred by <u>Heck</u>.

27   ////

28   ////

16

1        3.  <u>Discussion</u>

2        Defendants, as the moving parties, bear the burden of presenting evidence establishing the

3    applicability of the <u>Heck</u> bar.  They have not done so.  Absent evidence of the factual basis for

4    plaintiff's plea—such as a plea colloquy transcript or a written factual basis incorporated into a

5    plea agreement—the court cannot undertake the required analysis.  <u>See</u> <u>Sanford</u>, 258 F.3d at

6    1119; <u>Martell</u>, 115 F.4th 1239.  Courts that have found <u>Heck</u> applicable have done so on the basis

7    of a record as to the specific factual basis for the conviction.  <u>See</u> <u>Tompkins v. Thomas</u>, No. 1:22-

8    cv-1415 JLT EPG P, 2024 WL 1908104, at *3-4, 2024 U.S. Dist. LEXIS 79697, at *9-12 (E.D.

9    Cal. May 1, 2024) ("[A]s part of the plea, Plaintiff stipulated to the 'factual basis on the probable

10   cause statement and the reports in discovery," and therefore could not pursue a § 1983 action that

11   would directly negate the stipulated facts), report and recommendation adopted, 2024 WL

12   2883402, 2024 U.S. Dist. LEXIS 79697 (E.D. Cal. June 6, 2024); <u>King v. Villegas</u>, No. 1:17-cv-

13   0676 JLT EPG P, 2023 WL 4627687, at *8, *11, 2023 U.S. Dist. LEXIS 124643, at *22, *30

14   (E.D. Cal. July 19, 2023) (<u>Heck</u> barred plaintiff's excessive force claims because success on his

15   claims would necessarily undermine the validity plaintiff's no contest plea, which the criminal

16   court accepted based on the probable cause statement and the reports in discovery); <u>Rubio v. City</u>

17   <u>of Visalia</u>, No. 1:21-cv-0286 SAB, 2024 WL 919452, at *2, 2024 U.S. Dist. LEXIS 36248, at

18   *27-28 (E.D. Cal. Mar. 1, 2024) ("The record in Plaintiff's criminal case reflects that the parties

19   stipulated—and the State Court accepted—that the police report formed the factual basis of the

20   Plaintiff's no contest plea. . . . Thus, for purposes of its <u>Heck</u> analysis, the Court finds all acts

21   'through the end of [Plaintiff's] resistance' contained within the police report formed the basis of

22   the plea to resisting.").

23       The defendants' reliance on the Information, Advisement and Waiver of Rights, Criminal

24   Minutes, defendants criminal trial testimony, and plaintiff's deposition testimony to establish the

25   factual basis of plaintiff's plea in this case is misguided.  The Information merely establishes that

26   plaintiff was *charged* with resisting an executive officer under California Penal Code § 69(a) and

27   battery on a custodial officer under California Penal Code § 243.1.  ECF No. 61-11 at 3, Exhibit

28   8A, Information.  Defendants' trial testimony merely establishes that the case involved plaintiff's

conduct on July 12, 2018.  ECF No. 62-1, Exhibit 2 and 3, Brandon Wehe's and Paul Solbos's

Trial Testimony Transcripts.  The Advisement and Waiver of Rights and Criminal Minutes from

plaintiff's plea hearing merely establish that plaintiff pleaded nolo contendere to a violation under

California Penal Code § 243.1, freely and voluntarily, and that there was an unspecified "factual

basis" for the plea.  ECF No. 61-11 at 6, Exhibit 8B, Advisement and Waiver of Rights

(Misdemeanor); ECF No. 61-11 at 11, Exhibit 8C, Criminal Minutes dated March 15, 2019.  And

plaintiff's deposition testimony merely establishes that: (1) plaintiff had a trial for the criminal

charges of resisting and battery, and that the battery discussed was plaintiff kicking Deputy

Solbos, Plaintiff's Depo. 74:2-6; (2) plaintiff understood the factual basis of the Information and

the charges against him, id. 90:19-25; and (3) plaintiff understood that by pleading nolo

contendere he was waiving the right to dispute the "factual basis" of his conviction, id. 80:1-24.

This evidence, however, does not establish the specific factual basis for the plea.

As in Sanford v. Martell, supra, nothing in the record, including plaintiff's testimony,

establishes the factual basis of plaintiff's plea.  In Sanford, on summary judgment, defendants

argued on summary judgment that plaintiff's § 1983 action was barred by Heck because plaintiff

had been charged with battery and resisting arrest, pleaded nolo contendere to resisting arrest, and

provided testimony that "her only contact with defendant was his punch and that the punch was

the arrest." Sanford, 258 F.3d at 1118-1119.  The Ninth Circuit rejected the defendants'

argument and reversed the district court's decision granting defendants' motion based on Heck.

Id. at 1119-1120.  In doing so, the court found that:

> The defendants' effort to turn Sanford's testimony against her is
> misplaced. Nothing in her testimony identifies the act of which she
> was convicted as being a resistance to Motts' punch. Nothing in the
> record identifies the punch as an arrest. Nothing in the record informs
> us what the factual basis was for Sanford's plea of nolo. . . It was the
> burden of defendants to establish their defense by showing what the
> basis was; they failed to do so.

Id. at 1119.

Here, "[a] conviction under § 243.1 requires a showing of three elements: (1) that the

custodial officer was acting within the scope of his or her duties; (2) that the prisoner willfully

and unlawfully touched the custodial officer in a harmful or offensive manner; and (3) a finding

18

1    that when the prisoner acted, he knew, or reasonably should have known, that the custodial

2    officer was performing his duties." Velarde v. Duarte, 937 F. Supp. 2d 1204, 1209 (S.D. Cal.

3    2013) (citing People v. Gutierrez, 174 Cal. App. 4th 515, 521 (Cal. Ct. App. 2009)). But the

4    evidence provided by defendants sheds no light on what constituted the "willful and unlawful

5    touching" which formed the basis of plaintiff's plea, and without that the court cannot determine

6    which of Solbos' actions were deemed lawful and cannot be refuted in a subsequent § 1983

7    action.

8            Moreover, to the extent defendants argue that plaintiff's nolo contendere plea to battery

9    was based on plaintiff kicking Solbos, such argument also fails because, although likely that

10   plaintiff's plea was based on such conduct, defendants have not provided evidence of the fact.

11   Regardless, even if defendants could establish that plaintiff's plea to battery was based on

12   plaintiff kicking Solbos on July 12, 2018, this would not bar plaintiff from proceeding on a theory

13   that the force used in response to plaintiff kicking defendant Solbos was more than necessary to

14   subdue him and therefore excessive. See Rodriguez v. City of Modesto, 535 F. App'x 643, 645

15   (9th Cir. 2013) (Heck does not bar claim that officers "though having a right to use reasonable

16   force . . . responded with excessive force" (citing Hooper, 629 F.3d at 1132); Yount v. City of

17   Sacramento, 43 Cal. 4th 885, 898-99 (2008)); Smith, 394 F.3d at 693 (excessive force claim is not

18   barred by Heck where excessive force takes place "subsequent to the time [plaintiff] engaged in

19   the conduct that constituted the basis for his conviction"). Instead, it would bar plaintiff from

20   proceeding on a theory that any use of force was excessive because it was unprovoked. See

21   Cunningham, 312 F.3d at 1153 (Heck bars "claims under § 1983 if they are based on *theories* that

22   'necessarily imply the invalidity of his conviction[s] or sentence[s].'" But plaintiff does not

23   attempt to proceed on such theory. Instead, plaintiff argues that the force was an excessive and

24   unreasonable response to plaintiff's conduct. ECF No. 66-1 at 14; see also FAC at 11. Plaintiff's

25   theory concerning defendant Solbos's and Wehe's action after plaintiff kicked defendant Solbos

26   would therefore not be barred by Heck.

27           Accordingly, Heck does not bar the excessive force claims against Solbos and Wehe and

28   the motion for summary judgment should be denied on this ground.

19

1        B.     Fourteenth Amendment

2           1.  Legal Standard

3        "The Fourteenth Amendment, and not the Eighth Amendment, governs cruel and unusual

4    punishment claims of pretrial detainees." Byrd v. Maricopa Cnty. Bd. Of Supervisors, 845 F.3d

5    919, 924 n.2 (9th Cir. 2017). "[T]he Fourteenth Amendment is more protective than the Eighth

6    Amendment 'because the Fourteenth Amendment prohibits *all* punishment of *pretrial detainees*,

7    while the Eighth Amendment only prevents the imposition of *cruel and unusual* punishment of

8    *convicted prisoners*.'" Vazquez v. County of Kern, 949 F.3d 1153, 1163-64 (9th Cir. 2020)

9    (quoting Demery v. Arpaio, 378 F.3d 1020, 1029 (9th Cir. 2004)).

10        Under the Fourteenth Amendment, "a pretrial detainee must show only that the force

11    purposely or knowingly used against him was objectively unreasonable." Kingsley v.

12    Hendrickson, 576 U.S. 389, 396-97 (2015). "[O]bjective reasonableness turns on the 'facts and

13    circumstances of each particular case'" and must be determined "from the perspective of a

14    reasonable officer on the scene, including what the officer knew at the time, not with the 20/20

15    vision of hindsight." Id. at 397 (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)).

16    
17    
18    
19    
> Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: [1] the relationship between the need for the use of force and the amount of force used; [2] the extent of the plaintiff's injury; [3] any effort made by the officer to temper or to limit the amount of force; [4] the severity of the security problem at issue; [5] the threat reasonably perceived by the officer; and [6] whether the plaintiff was actively resisting.

20    Id. at 397. Whether the individual "posed an immediate threat to the safety to the officers or

21    others" is the most important consideration. Mattos v. Agarano, 661 F.3d 433, 441 (9th Cir.

22    2011) (citing Graham, 490 U.S. at 396). The absence of a serious or significant injury is not

23    outcome determinative. See Hudson v. McMillian, 503 U.S. 1, 4, 7 (1992) (holding that a serious

24    injury is not necessary to establish excessive force).

25        Excessive force cases often turn on credibility determinations, and "[the excessive force

26    inquiry] nearly always requires a jury to sift through disputed factual contentions, and to draw

27    inferences therefrom." Smith, 394 F.3d at 701 (alteration in original) (quoting Santos v. Gates,

28    287 F.3d 846, 853 (9th Cir. 2002)). Therefore, "summary judgment or judgment as a matter of

1    law in excessive force cases should be granted sparingly." Id. (quoting Santos, 287 F.3d at 853).

2    The Ninth Circuit has "held repeatedly that the reasonableness of force used is ordinarily a

3    question of fact for the jury." Liston v. County of Riverside, 120 F.3d 965, 976 n.10 (9th Cir.

4    1997) (citations omitted).

5                                                2.  Discussion

6        Plaintiff alleges that on July 12, 2018, defendants Solbos and Wehe used excessive and

7    unreasonable force at various points during the cell removal.  As set forth above, the parties'

8    version of events of what transpired on that day are clearly at odds.  Viewing the evidence in the

9    light most favorable to plaintiff, as the court must, the undersigned finds that there is a triable

10   issue on the question whether defendants' uses of force on July 12, 2018, were excessive and

11   unreasonable.   The court here identifies several disputed issues of material fact.

12                                         a.  Overly Tight Handcuffs

13       Plaintiff alleges that defendant Solbos applied excessive and unreasonable when he

14   unnecessarily handcuffed plaintiff and overly tightened the handcuffs.  Plaintiff testified that it

15   was unnecessary to handcuff him because he was sitting in the back of his cell, facing the wall,

16   with his hands behind his back, as ordered, and his cell window, which was obstructed and of

17   concern to jail staff, could have been cleaned without Solbos or anyone else needing to enter his

18   cell to handcuff and remove him.  Plaintiff also testified that Solbos overly tightened plaintiff's

19   handcuffs and refused to loosen them when plaintiff repeatedly complained they were too tight

20   and screamed in pain.

21       Defendants dispute plaintiff's version of events.  Solbos and Wehe testified that it was

22   necessary to enter plaintiff's cell and handcuff him and remove him because plaintiff had

23   obstructed the view into his cell by smearing feces on his cell window, which presented

24   biological and safety hazards.  Solbos and Wehe testified the handcuffs were properly fitted and

25   that they both checked to make sure they were properly fitted when plaintiff complained they

26   were too tight.  Because they determined that they were properly fitted, the handcuffs were not

27   loosened.

28       "Simple handcuffing is not, by itself, excessive force." Hoffman v. City of Los Angeles,

                                                 21

1    CV 15-3724 FMO (ASx), 2016 WL 4698939, at *7, 2016 U.S. Dist. LEXIS 123515, at *19-20

2    (C.D. Cal. Jan. 5, 2016); accord Dillman v. Tuolumne County, No. 1:13-cv-0404 LJO SKO, 2013

3    WL 1907379, at *7, 2013 U.S. Dist. LEXIS 65206, at *20 (E.D. Cal. May 7, 2013).  However,

4    "[i]t is well-established that overly tight handcuffing can constitute excessive force."  Wall v.

5    County of Orange, 364 F.3d 1107, 1112 (9th Cir. 2004) (citations omitted); LaLonde v. County of

6    Riverside, 204 F.3d 947, 960 (9th Cir. 2000); Thompson v. Lake, 607 F. App'x 624, 625–26 (9th

7    Cir. 2015).  Here, construing the disputed facts in the light most favorable to plaintiff, a

8    reasonable jury could conclude that Solbos overly tighten plaintiff's handcuffs and therefore used

9    excessive force.  See James v. Lee, 485 F. Supp. 3d 1241, 1254-57 (S.D. Cal. 2020) (district

10   courts within the Ninth Circuit have "found a triable issue when the handcuffs caused

11   demonstrable injury or unnecessary pain, or when officers ignored or refused requests to loosen

12   the handcuffs once alerted that the handcuffs were too tight.").  Resolution of this issue ultimately

13   turns on witness credibility determinations that are the province of the jury and preclude summary

14   judgment.  See Anderson, 477 U.S. at 255.

15                    b.  Rear-Wrist-Lock

16          Plaintiff claims that because he was not resisting, Solbos's use of force—applying a rear-

17   wrist-lock compliance technique on plaintiff as he was escorting him—was excessive and

18   unreasonable.  Solbos, however, denies ever applying this compliance technique.  Again, this

19   dispute cannot be resolved without a credibility determination.  Under plaintiff's version of

20   events, there was no need for Solbos to apply any force because there were no security or threat to

21   safety issues because plaintiff was handcuffed and not resisting.  See Bell v. Williams, 108 F.4th

22   809, 822 (9th Cir. 2024) ("If a detainee is complying with orders, then any amount of unnecessary

23   force is objectively unreasonable, even if the detainee previously disobeyed order. Persisting in

24   using force in such a situation would amount to punishment, and the Fourteenth Amendment's

25   Due Process Clause prohibits punishing pre-trial detainees who have not yet be adjudged

26   guilty.").  Summary judgment is not appropriate.

27                    c.  Slam Against Wall and Sweep to the Floor

28          Plaintiff claims that it was unnecessary and excessive for Solbos and Wehe to slam him

against the right-cell wall and sweep his legs from under him, after plaintiff jabbed Solbos in the leg. Plaintiff claims that when he kicked Solbos, he was very weak and about to pass out from the pain caused by the rear-wrist-lock and overtightening of his handcuffs. Plaintiff claims that slamming him against the wall and sweeping his legs from under him caused swelling to the right side of his head, Plaintiff's Depo. 63:18-21, 84:22-25, a scar or bruising between one-to-two inches wide by three-to-four inches long, id. 63:9-25, and bruising to both of his inner knees, id. 64:1-11. In contrast, Solbos claims that plaintiff forcefully kicked Solbos, causing Solbos to fall backwards, hit the wall, and pull plaintiff down with him because he was holding onto the plaintiff at the time of the escort. Solbos asserts he did not slam plaintiff into the wall and that they both ended up on the ground as a result of plaintiff's forceful kick. Wehe asserts he did not slam plaintiff into the wall and that Wehe, with the assistance of Solbos, pulled plaintiff to the ground in an attempt to regain control over plaintiff.

Determination whether Solbos used objectively unreasonable force depends on disputed circumstances, especially whether plaintiff had kicked him hard or jabbed him weakly and ineffectively. If a jury accepts plaintiff's testimony as credible, it could conclude that plaintiff's single jab backward, striking one of the escorting officer's legs with minor force, did not present a significant security threat or an act of resistance that posed a significant threat to the safety of staff or others and warranted slamming plaintiff into the wall and sweeping his legs from under him. A reasonable jury could also conclude that, although the alleged injuries from being slammed against the wall and swept to the floor were not significant, the amount of force used was not proportional to the need for such force in this case.

d. <u>Ground Assault</u>

Plaintiff claims that, because he was on the ground not resisting, Solbos and Wehe used excessive and unreasonable force when they jumped down on plaintiff and Solbos repeatedly slammed plaintiff's head on the ground. Solbos and Wehe, however deny jumping on plaintiff while he was on the ground, or repeatedly hitting plaintiff's head on the ground. Solbos and Wehe testified that once plaintiff was on the ground, plaintiff resisted defendants' attempts to regain control over him. Solbos and Wehe turned plaintiff onto his stomach and only used the

23

necessary amount of their body weight on plaintiff to regain control and prevent further assault of staff and prevent plaintiff from causing harm to himself.  This conflict in this testimony cannot be resolved without a trial because it turns on credibility determinations.  See Anderson, 477 U.S. at 255.

### e.  Salivary Gland Hold

Plaintiff claims that, because plaintiff was not resisting and not attempting to spit on defendants or anyone else during the incident, Wehe's use of a salivary gland hold was excessive and unreasonable.   Wehe on the other hand, testified that using a salivary gland hold on plaintiff was necessary because plaintiff was resisting and the salivary hold technique is used in such circumstances to prevent an inmate from spitting, biting, or doing other things with their mouths. Wehe Trial Testimony 16:17-22; Wehe Depo. 129:7-22.  Plaintiff himself testified that he "lunged off" and "flailed off" of the ERC while defendant Solbos was trying to remove the handcuffs, Plaintiff's Depo. 67:1-16, which undermines his position that at no point during the time he was being restrained in the ERC he resisted.  However, that testimony does not undermine plaintiff's contention that Wehe used the salivary gland hold at a time when plaintiff was offering no resistance.  Additionally, Wehe does not claim to have applied the salivary gland on plaintiff because he was lunging, flailing, or moving off the chair.  Instead, Wehe claims to have used the hold as a *preventative* measure to keep plaintiff from spitting or biting.  Moreover, Wehe could not say at the criminal trial whether plaintiff was in fact resisting at the time. Instead, Wehe testified that he thought plaintiff may have been resisting, not a lot but some, because he moved his head and because Solbos said plaintiff was clenching his wrists.  Wehe Trial Transcript 45:12-47:9.  Because the circumstances leading to Wehe's use of the salivary gland hold are disputed, defendants are not entitled to summary judgment.

### f.  Handcuff Removal and ERC

Plaintiff claims that Solbos used excessive and unreasonable force by forcefully flipping plaintiff's wrists while taking two and a half minutes to remove plaintiff's handcuffs.  Plaintiff also claims it was excessive for Solbos to have him placed in an ERC and for Wehe to leave plaintiff restrained, while naked, for four hours in a cold safety cell.  According to Solbos's

1   version of events, *plaintiff*, not Solbos, was manipulating plaintiff's hands while plaintiff was in

2   the ERC, thus making it difficult for Solbos to remove the handcuffs.  Again, the conflicting

3   evidence cannot be resolved without credibility determinations that are the within province of a

4   jury.  If plaintiff's version of events is credited, a jury could find that defendants used force

5   disproportionate to the need to restrain him.  See United States v. Hill, 99 F.4th 1289, 1304, 1306

6   (11th Cir. 2024).

7                    3.   Conclusion

8          Given the state of the disputed facts and the need for credibility determinations, which are

9   issues that require resolution at trial, summary judgment in defendants' favor on plaintiff's

10  Fourteenth Amendment excessive force claims is inappropriate.

11         C.      Qualified Immunity

12                 1.   Legal Standard

13         Qualified immunity is a defense that must be pled by a defendant official.  Harlow v.

14  Fitzgerald, 457 U.S. 800, 815 (1982).  It is an "entitlement not to stand trial or face the other

15  burdens of litigation."  Saucier v. Katz, 533 U.S. 194, 200 (2001) (quoting Mitchell v. Forsyth,

16  472 U.S. 511, 526 (1985), overruled on other grounds by Pearson v. Callahan, 555 U.S. 223, 236

17  (2009)).  Even if a constitutional violation occurred, prison officials are entitled to qualified

18  immunity if they acted reasonably under the circumstances.  See Friedman v. Boucher, 580 F.3d

19  847, 858 (9th Cir. 2009); Anderson v. Creighton, 483 U.S. 635, 646 (1987).  When government

20  officials are sued in their individual capacities for civil damages, a court must "begin by taking

21  note of the elements a plaintiff must plead to state a claim . . . against officials entitled to assert

22  the defense of qualified immunity."  Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009).

23         The doctrine of qualified immunity "protects government officials from 'liability for civil

24  damages insofar as their conduct does not violate clearly established statutory or constitutional

25  rights of which a reasonable person would have known.'"  Tibbetts v. Kulongoski, 567 F.3d 529,

26  535 (9th Cir. 2009) (quoting Harlow, 457 U.S. at 818).  The qualified immunity analysis involves

27  two parts, determining (1) whether the facts that a plaintiff has alleged or shown make out a

28  violation of a constitutional right; and (2) whether the right at issue was clearly established at the

                                                    25

1    time of the defendant's alleged misconduct.  Saucier, 533 U.S. at 201; see Pearson, 555 U.S. at

2    232, 236; see also Bull v. City and County of San Francisco, 595 F.3d 964, 971 (9th Cir. 2010).

3    These prongs need not be addressed in any particular order.  Pearson, 555 U.S. at 236.

4         A right is clearly established only if "it would be clear to a reasonable officer that his

5    conduct was unlawful in the situation he confronted."  Saucier, 533 U.S. at 202; Norwood v.

6    Vance, 591 F.3d 1062, 1068 (9th Cir. 2010).  A case "directly on point" is not required; instead,

7    "for a right to be clearly established, existing precedent must have placed the statutory or

8    constitutional question beyond debate."  Kisela v. Hughes, 584 U.S. 100, 104 (2018) (quoting

9    White v. Pauly, 580 U.S. 73, 79 (2017) (internal quotation marks omitted)).  "Beyond debate"

10   means that every reasonable official would understand that what he is doing is unlawful.  See

11   District of Columbia v. Wesby, 583 U.S. 48, 63 (2018); Vos v. City of Newport Beach, 892 F.3d

12   1024, 1035 (9th Cir. 2018).

13                          2.  Discussion

14        The court has determined that under plaintiff's version of the facts, the allegations

15   demonstrate defendants used excessive force in violation of plaintiff's rights under the Fourteenth

16   Amendment, and the first prong is therefore resolved in plaintiff's favor for purposes of summary

17   judgment.  With respect to whether these rights were clearly established at the time, the

18   undersigned finds that they were.

19        At the time of the incident, it was clearly established that "overly tight handcuffing can

20   constitute excessive force," Wall, 364 F.3d at 1112, that "force is only justified when there is a

21   need for force," Blankenhorn v. City of Orange, 485 F.3d 463, 481 (9th Cir. 2007), and that an

22   officer's use of force must be proportional to the need for such force.  Id.  Crediting plaintiff's

23   version of events, defendants uses of force were either unnecessary or not proportional to the

24   need for use of force.  Accordingly, qualified immunity does not provide a basis for summary

25   judgment.

26   IX.    Plain Language Summary of this Order for a Pro Se Litigant

27        This court is recommending that the defendants' motion for summary judgment be denied

28   because your excessive force claims against defendants Solbos and Wehe (1) are not barred by

1   your nolo contendere plea to battery and (2) require a trial to determine which version of events

2   occurred to decide whether the force used was objectively unreasonable.  It is also being

3   recommended that your cross-motion for summary judgment be denied because you did not file it

4   on time or follow the rules of this court.

5                                            CONCLUSION

6        IT IS HEREBY ORDERED that:

7        1.   Defendants' request for judicial notice (ECF No. 61-2) is granted.

8        2.   Plaintiff's request for judicial notice (ECF No. 66-2) is granted.

9        IT IS FURTHER HEREBY RECOMMENDED, for the reasons set forth above, that

10  defendants' motion for summary judgment (ECF No. 61) and plaintiff's cross-motion for

11  summary judgment (ECF No. 66) be denied.

12       These findings and recommendations are submitted to the United States District Judge

13  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days

14  after being served with these findings and recommendations, any party may file written

15  objections with the court and serve a copy on all parties.  Such a document should be captioned

16  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

17  objections shall be served and filed within fourteen days after service of the objections.  The

18  parties are advised that failure to file objections within the specified time may waive the right to

19  appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

20  DATED:  March 20, 2025

21

22

23                                          ALLISON CLAIRE
                                            UNITED STATES MAGISTRATE JUDGE

24

25

26

27

28

                                                 27